Filed 12/16/13  P. v. Shabazz CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B246873 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA358546) |
| v. | |
| RASHAD SHABAZZ, | |
| Defendant and Appellant. | |

THE COURT:[*]

Defendant Rashad Shabazz appeals following his conviction by jury of one count of assault with a deadly weapon, a knife, in violation of Penal Code section 245, subdivision (a)(1).[1]  The jury found true the allegation that, in the commission of the assault, defendant personally inflicted great bodily injury upon the victim within the meaning of section 12022.7, subdivision (a).[2]

---

[*]    BOREN, P. J ., ASHMANN-GERST, J., CHAVEZ, J.,

[1]    All further references to statutes are to the Penal Code unless stated otherwise.

[2]    The jury acquitted defendant of attempted murder.

After denying defendant's motion to strike the great bodily injury enhancement and his motion for a new trial, the trial court sentenced defendant to seven years in state prison. The sentence consisted of four years for the assault and a consecutive three years for the great bodily injury enhancement.

We appointed counsel to represent defendant on this appeal. On August 6, 2013, counsel filed an "opening brief" in which he stated that he had failed to find any arguable issues. On August 6, 2013, we informed defendant that he had 30 days in which to file a supplemental brief containing any issues he wished this court to consider. No response has been received to date.

## FACTS

The record shows that the victim, Robert Lackaye, was working as a construction inspector on July 1, 2009. He was standing outside the construction site speaking with two colleagues when defendant passed in between them. Lackaye said to defendant, "How are you doing?" Defendant stopped and asked what Lackaye had said or something similar and then said something Lackaye did not understand. Defendant then said what sounded like "you better not look down." Lackaye saw that defendant looked displeased. As defendant moved on, Lackaye apologized to defendant and said that he did not mean any disrespect. Lackaye turned to speak with his colleagues again. After approximately five minutes, Lackaye felt an impact to the back of his neck while simultaneously one of his colleagues said, "Look out." Lackaye turned and saw defendant running away with some type of metal implement in his hand.

Brian Lindsey, one of Lackaye's colleagues, saw defendant slam his fist down in a stabbing motion at the back of Lackaye's neck. Lackaye fell toward Lindsey but caught himself. Lindsey saw that Lackaye had a puncture wound of approximately half an inch that was bleeding significantly. Lindsey applied pressure to the wound until paramedics arrived. Lackaye was later treated for a wound approximately one centimeter in length that passed through the skin and subcutaneous tissue to the level of the muscle. The wound was closed with a staple.

2

Shortly thereafter, in the same area, a witness saw defendant try to hand the knife to a man. Defendant said, "I stabbed a man." The man closed the door on defendant, and defendant stabbed the knife into the ground and ran. Another witness saw defendant pass through his driveway and enter his yard. Defendant soon came back out. He was shaking his head from left to right. One of defendant's hands was wrapped in a shirt and was dripping blood.

At approximately 4:00 p.m. that afternoon, defendant showed up at a building that used to house a hospital, and paramedics were called. A paramedic who rode with defendant to Centinela Hospital reported that defendant had a laceration to his hand. Defendant pulled away when the paramedic attempted to touch him. Defendant refused to communicate except to warn another paramedic from the fire department not to touch him. During the journey he began yelling, cursing, and talking in incomplete sentences. These outbursts were interspersed with seconds of complete silence.

Officer Joseph Martinez and his partner of the Los Angeles Police Department investigated the stabbing. Officer Martinez proceeded to Centinela Hospital after receiving word of a possible suspect being treated for a stab wound. The officer arrived to find defendant being treated by hospital staff for two lacerations in his right hand. Officer Martinez asked defendant his name, and defendant gave it. Defendant did not respond when asked what happened to his hand but said, "I didn't mean to hurt that man." He said to call the police because he had done something wrong.[3] The parties stipulated that defendant was arrested and booked on July 1, 2009.

At trial, the prosecution witnesses testified as recounted *ante*. The defense called Dr. Diana Botezan, who testified that she treated defendant on May 25, 2009, and diagnosed him with schizoaffective disorder. He had been found naked the day before in a cow pasture and said he had just come from a spaceship. He said he was talking with the cows and they were talking to him. He was taken to the Kern Medical Center in Bakersfield, a mental health hospital.

---

[3] The trial court denied the motion to suppress defendant's statements and held that defendant was not subjected to a custodial interrogation.

In January 2008, Dr. William Gillespie diagnosed defendant with schizophrenia, paranoid type. Dr. Gillespie determined that defendant was suffering from some type of hallucination or paranoia in June 2009. His diagnosis was "schizophrenia, acute exacerbation." He prescribed medications for defendant.

Carl Evans worked at the Central Living Center, where defendant stayed for a time. Defendant was introverted and stayed to himself. He was gone for two or three days and was returned to the Center by his mother on July 1, 2009. Defendant said he had to do laundry and was going to the store. A few minutes later he ran back in the gate and looked panicked. He had a knife in his hand. He put it in the grass and ran out the gate.

Defendant testified that he did not intend to kill Lackaye or to hurt him. The night before the stabbing he had stayed on his mother's porch. Because he thought his life was in danger, he stole a knife from his mother's house. He knew he was ill at the time. He was hoping his mother or Evans would ask him for the knife but they did not. He believed that Lackaye got angry with him because he walked past him. Lackaye ran up on him "just basically saying that he was white." Lackaye just attacked him, so he left. Lackaye did not say "How are you doing," but became like a monster. Defendant was afraid of him. Defendant testified that he sometimes went into another world, the matrix, and he considered himself the golden child. He did not remember stabbing the man.

Dr. Haig Kojian, a forensic psychologist, evaluated defendant and stated that he was suffering from a schizophrenic process. It is a severe mental condition that affects an individual's thought process and manifests in behavioral disorganization at times. Defendant's symptoms began to manifest at age 19 or 20. Defendant had ongoing episodes of compensation and then decompensation. Defendant has consistently demonstrated severe mental illness, and the doctor believed defendant was suffering from the effects of this mental illness on July 1, 2009.

## PROCEDURAL HISTORY

At defendant's preliminary hearing on September 9, 2009, a doubt was declared as to defendant's competence under section 1368. After Dr. Kory J. Knapke reported that

4

defendant was competent to stand trial, the court found defendant mentally competent on December 2 and December 8, 2009. On January 22, 2010, the court again declared a doubt under section 1368 and denied defendant's request to represent himself. On April 15, 2010, defendant was found to be competent again. Doubt was again declared on April 6, 2011, and the court ruled defendant incompetent to stand trial on June 7, 2011. On October 7, 2011, the court stated that it had received a report that defendant was competent and simply malingering, and it found defendant competent. Defense counsel again declared a doubt, but the court found defendant competent on January 11, 2012. Defense counsel declared a doubt on April 19, 2012, and the court suspended criminal proceedings. Defendant was again found to be competent on June 13, 2012.

On August 28, 2012, after a prolonged hearing, defendant almost entered into a plea but ultimately did not. At a subsequent hearing, the court granted a defense motion to strike the allegation of premeditation and deliberation with respect to the attempted murder charge in count 1. Defendant again refused to accept a plea bargain midtrial. The trial court denied defendant's midtrial *Marsden* motion and motion to represent himself.[4] The court found defendant was competent to stand trial, but incompetent to act as his own attorney. Defendant subsequently became disruptive and the court ordered a recess to have defendant examined. Dr. Ronald Markman examined defendant and found he was competent to stand trial. The court found defendant competent to proceed. The trial court denied a defense motion to dismiss the attempted murder count due to lack of intent and to dismiss the great bodily injury allegation. The trial court denied the defense motion to redact defendant's statements from a report from Dr. Kojian regarding an October 17, 2012 evaluation of defendant. The court ruled that the prosecution could not call their rebuttal witness from Patton State Hospital. As noted, the trial court denied defendant's motion for a new trial and to strike the great bodily injury allegation.

---

[4]     *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

5

## CONCLUSION

We have examined the entire record, including the transcripts of the hearings on defendant's *Marsden* motion and another sealed proceeding that occurred on September 20, 2012.  We are satisfied that defendant's attorney has fully complied with his responsibilities and that no arguable issues exist.  (*People v. Wende* (1979) 25 Cal.3d 436.)

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.